## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**SPITZER AUTOWORLD AKRON, LLC,**   **Case No. 1:22-cv-01755-PAB**

        **Plaintiff,**

        **-vs-**   **JUDGE PAMELA A. BARKER**

**FCA US LLC,**

        **Defendant.**   **MEMORANDUM  OPINION  AND  ORDER**

This matter is before the Court upon Defendant FCA US, LLC's ("FCA") Motion to Dismiss Plaintiff Spitzer Autoworld Akron, LLC's ("Spitzer") Second Amended Complaint ("SAC") filed on July 10, 2023.  (Doc. No. 22.)  On August 9, 2023, Spitzer filed a Brief in Opposition to FCA's Motion to Dismiss, and on August 23, 2023, FCA filed a Reply in Support of its Motion.  (Doc. Nos. 23, 24.)  Accordingly, FCA's Motion to Dismiss is ripe for a decision.

For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** FCA's Motion to Dismiss.  (Doc. No. 22.)

I.     **Background**

     A.     **The Second Amended Complaint**

Spitzer's SAC sets forth the following allegations.

Spitzer was a motor vehicle dealer for Chrysler LLC ("Chrysler") at the time Chrysler filed for bankruptcy protection in April 2009.  (SAC, Doc. No. 20 at ¶ 7.)  Spitzer's Chrysler franchise, which operated at 1535 V. Odom Boulevard in Akron, Ohio, was rejected by Chrysler in the bankruptcy without regard to Ohio's dealer protection laws.  (Doc. Nos. 20-1 at 1; 20-4 at 1; 20 at

¶ 7.)  While Chrysler's bankruptcy was pending, Congress enacted § 747 of the Consolidated Appropriations Act ("Section 747" or "the Act") which required FCA and its predecessor Chrysler to submit to an arbitration with rejected dealers like Spitzer in order to determine if such rejected dealers should be reinstated as Chrysler brand dealers.  (Doc. No. 20 at ¶ 8.)  On June 23, 2010, an arbitrator issued a decision (the "Arbitrator's Decision") pursuant to Section 747 ordering FCA to reinstate Spitzer as a "new" Chrysler dealer in the Akron metropolitan area, specifically in Green, Summit County, Ohio.[1]  (*Id.* at ¶ 9.; Doc. No. 20-1 at 4.)  The Arbitrator's Decision indicates that Spitzer's dealership at the V. Odom Boulevard location "was only to remain . . . for a short period of time, to enable [Spitzer] to build a new dealership in [] Summit County."  (Doc. No. 20-1 at 4.)

The Act provides that if the arbitrator finds in favor of a covered dealership, including Spitzer, then a covered manufacturer, i.e., FCA, must provide a customary and usual letter of intent no later than seven business days following receipt of the Arbitrator's Decision.  (Doc. No. 20 at ¶ 10.)  FCA failed to provide Spitzer with a letter of intent within that seven-day period.  (*Id.*)  It was not until October 1, 2010, that FCA issued a Letter of Intent ("LOI") to Spitzer.[2]  (*Id.* at ¶ 11.).

Despite FCA's opposition to Spitzer's request for the arbitrator to correct its Arbitrator's Decision regarding the deadline to complete construction of its dealership at Arlington Road in Green, Ohio, on July 23, 2010, the arbitrator issued a Modification and Clarification of Written Determination, establishing the deadline of December 31, 2011, for completion of the new dealership, terminating the present dealership on that date or earlier if the new dealership was completed prior to

---

[1] Attached as Exhibit A to Spitzer's SAC is the Written Determination of Arbitrator which specifies "The Covered Dealership" as "the automobile dealership known as Spitzer Autoworld Akron, LLC located at 1535 V. Odom Blvd., Akron, Ohio 44302."  (Doc. No. 20-1.)
[2] Attached as Exhibit B to Spitzer's SAC is the LOI issued by FCA to Spitzer dated October 1, 2010.  (Doc. No. 20-2.)

2

that date, at which time the dealership should be transferred to the new dealership in southern Summit County.[3]  (*Id.* at ¶¶ 12, 13.)

FCA's LOI to Spitzer contained conditions which were not part of the Arbitrator's Decision, but which FCA claimed were its "usual and customary" conditions for a new Chrysler dealership. (*Id.* at ¶ 15.)  Included within FCA's LOI was a provision that before FCA would issue its standard Sales and Service Agreement to Spitzer, eight conditions must be met, including the following:

> [t]he final, successful resolution of all protests, lawsuits, demands for arbitration or other legal challenges seeking to block the proposed establishments at either the V. Odom Boulevard or Arlington Road locations (collectively "challenge").  This LOI shall terminate effective on the date of a final decision barring the proposed establishment at either location.

(Doc. No. 20-2 at 1.)  If the eight conditions were not met by December 31, 2011, the LOI would terminate.  (Doc. Nos. 20 at ¶ 16; 20-2 at 1.)

Prior to the issuance of the LOI, on May 17, 2007, Fred Martin Motor Company ("Fred Martin") had contractually agreed with Spitzer to "'irrevocably' and 'forever' waive[] its right to protest Spitzer's dealership at both [the V.] Odom Boulevard [location] in Akron and at Green[,] Ohio," and also to waive "notice of a hearing and . . . a hearing regarding the same."[4]  (Doc. Nos. 20 at ¶ 19–20; 20-4 at 1–3.)

Following the issuance of the LOI, on or about November 22, 2010, FCA sent notice to Fred Martin of its intent to establish a Spitzer dealership at V. Odom Boulevard in Akron despite knowing that Fred Martin had waived its right to protest Spitzer's dealership at that location as well as in Green, Ohio.  (Doc. No. 20 at ¶ 19.)  Also in November 2010, FCA contacted the Ohio Motor Vehicle Dealers

---

[3] Attached as Exhibit C to Spitzer's SAC is the "MODIFICATION AND CLARIFICATION OF WRITTEN DETERMINATION."  (Doc. No. 20-3.)
[4] Attached as Exhibit D to Spitzer's SAC is the "Agreement" between Spitzer and Fred Martin.  (Doc. No. 20-4.)

Board ("OMVDB") to facilitate the filing of a protest by another dealer, Falls Chrysler, Jeep, Dodge ("Falls") (together with Fred Martin's protest, "the Protests").  (*Id.* at ¶ 21.)  This protest was outside the fifteen-day time limit for filing a protest under Ohio Revised Code § 4517.50.  (*Id.*)

By November 2010, Spitzer had fulfilled all the conditions in the LOI other than the condition that all legal challenges to the dealership be resolved.  (*Id.* at ¶ 23.)  Once the Protests were filed, Spitzer had to halt its construction activities.  (*Id.*)  However, a Stay Agreement extended the deadline for construction until all challenges regarding Section 747 and protests under Ohio law were resolved. (*Id.* at ¶ 24; *see also* Doc. No. 22-2 at 2–4.)

FCA repeatedly told Spitzer that it would represent Spitzer's interest in the Protests.  (Doc. No. 20 at ¶ 32.)  Instead, FCA eventually took positions in the Protests that were directly opposed to Spitzer.  (*Id.*)  Although FCA was required by Ohio law to participate and show good cause to establish Spitzer's dealership in the protest (and Spitzer was precluded from fully participating in the proceedings), FCA failed to take any steps to do so.  (*Id.* at ¶ 30.)  FCA never hired or consulted with any expert witness in order to make a legitimate attempt to show good cause to establish Spitzer's dealership in Akron.  (*Id.* at ¶ 31.)  FCA had a duty to enter into the LOI and participate in the protest proceedings in good faith, and Spitzer placed special trust and confidence in FCA to do so, but FCA breached its duties by its actions and inactions.  (*Id.* at ¶¶ 33, 34, 36–37.)  FCA worked with Fred Martin and Falls and their attorneys to ensure that Spitzer's dealership would never open.  (*Id.* at ¶ 39–40.)

In order to try to ensure that Spitzer's dealership would never open, FCA worked with attorneys for Fred Martin and Falls to wrongfully procure the protests despite knowing that Fred Martin had contractually waived its protest rights and that Falls did not timely file a protest.  (*Id.* at ¶

4

40.) FCA and its representatives, agents and attorneys colluded with representatives, agents and attorneys for Fred Martin and Falls in an attempt to prolong the protests, orchestrate a denial of the Spitzer dealership by the hearing officer, and strategize to ensure that Spitzer could never open the dealership that FCA was forced to re-instate via the Arbitration Decision. (*Id.* at ¶ 41.)

While the Protests were pending, Spitzer sued Fred Martin in Ohio state court for breach of contract, an injunction, and declaratory judgment ("the State Court Case"). (*Id.* at ¶ 42.) Spitzer alleged that Fred Martin had breached its contract with Spitzer by asserting a protest despite having contractually waived its right to protest Spitzer's dealerships at V. Odom Boulevard and in Green, Ohio. (*Id.*) Meanwhile, on October 27, 2017, FCA moved in Michigan federal court to hold Spitzer in contempt of court for filing and prosecuting the State Court Case against Fred Martin. (*Id.* at ¶ 44.) This motion was denied in the Michigan federal court on June 7, 2018. (*Id.* at ¶ 46; *see* Doc. No. 17.)

On June 28, 2022, the OMVDB issued a final decision that dismissed the Protests as moot. (Doc. No. 20 at ¶ 47.) In a July 5, 2022, letter, Spitzer notified FCA of its intention to construct its Green, Ohio, dealership. (*Id.* at ¶ 48.) On July 12, 2022, FCA responded to Spitzer's letter writing that it was refusing to honor the LOI and issue a Sales and Service Agreement because Spitzer did not fulfill all eight conditions. (*Id.* at ¶ 50.) FCA asserted that (1) the Protests were not concluded in a way FCA deemed "successfully," and (2) Spitzer did not "hold and maintain" the V. Odom Boulevard property and would not operate a temporary dealership at that location. (*Id.*)

On August 18, 2022, a jury in the State Court Case found that Fred Martin had breached its contract with Spitzer by filing its protest.[5] (*Id.* at ¶ 51.) On February 16, 2023, the state court issued

---

[5] Attached as Exhibit E to Spitzer's SAC are the jury interrogatories and verdict forms. (Doc. No. 20-5.) Attached as Exhibit F to Spitzer's SAC is the Ohio state court's entry of judgment in favor of Spitzer and against Fred Martin. (Doc. No. 20-6.)

a final order holding that Fred Martin is "enjoined from filing a protest of the establishment of Spitzer's dealership in Green" and that Fred Martin "contractually and irrevocably waived its right to notice of the establishment, its right to protest the establishment[,] and its right to a hearing before the [OMVDB] regarding the establishment."[6] (Doc. No. 20 at ¶ 54.)

**B. Present Lawsuit**

On August 17, 2022, FCA filed suit against Spitzer in the United States District Court for the Eastern District of Michigan ("the Eastern District Action"), seeking a declaration that, in relevant part, the "LOI is extinguished by virtue of the resolution of the [] Protests" and that "FCA [] is not obligated to provide any dealer agreement to Spitzer." (Doc. Nos. 9-1 at 10; 9-3.) In the Eastern District Action, Spitzer filed a Motion to Quash Service of the Summons, Dismiss for Improper Venue, and/or Transfer the Action to the Northern District of Ohio ("Spitzer's Motion to Dismiss"). (Doc. No. 9-1 at 10.) On October 3, 2022, Spitzer filed suit in this Court, alleging that FCA breached the LOI and seeking to enforce the Arbitrator's Decision. (Doc. No. 1.)

On November 14, 2022, Spitzer filed its first Amended Complaint in this case. (Doc. No. 7.) Pending resolution of the Eastern District Action and Spitzer's Motion to Dismiss, FCA moved in this case to dismiss, transfer, or stay Spitzer's first Amended Complaint ("Motion to Stay"). (Doc. No. 9.) This Court granted in part FCA's Motion to Stay, staying this case "pending the Eastern District of Michigan's resolution of the pending jurisdictional motion." (Non-Document Order, Feb. 9, 2023.)

---

[6] Attached as Exhibit G to Spitzer's SAC is the state court's final judgment in favor of Spitzer. (Doc. No. 20-7.)

On May 10, 2023, the District Court for the Eastern District of Michigan granted Spitzer's Motion to Dismiss, dismissing FCA's Eastern District Action for improper venue.  (Doc. No. 17-1.)  After the Eastern District Action concluded, this Court lifted the stay in this case.  (Doc. No. 17; Non-Document Order, May 16, 2023.)  On May 16, 2023, Spitzer was granted leave to amend its Complaint a second time.  (Doc. No. 18; Non-Document Order, June 1, 2023.)  In its SAC, Spitzer asserts the following six claims against FCA: Breach of Contract (Claim I); Breach of Good Faith Duty to Implement the LOI (Claim II); Breach of Fiduciary Duty (Claim III); Civil Conspiracy (Claim IV); Declaration of Rights under Section 747 of the Act, the Arbitrator's Decision and the LOI (Claim V); and Punitive Damages (Claim VI).  (Doc. No. 20, ¶¶ 57–82.)

On July 10, 2023, FCA filed the instant Motion to Dismiss.  (Doc. No. 22.)  On August 9, 2023, Spitzer filed its Brief in Opposition.  (Doc. No. 23.)  FCA then filed its Reply on August 23, 2023.  (Doc. No. 24.)  FCA's Motion to Dismiss is therefore ripe for disposition.

## II.    Law and Analysis

FCA moves to dismiss all of Spitzer's claims under Federal Rule of Civil Procedure 12(b)(6).  First, FCA argues that Spitzer cannot sustain its breach of contract claim because Spitzer failed to meet the conditions of the LOI, and therefore FCA's obligations never activated and could accordingly not have been breached.  (Doc. No. 22-1 at 10–12.)  Second, FCA contends that Spitzer's cause of action for breach of the duty of good faith and fair dealing is not a recognized legal theory for recovery under Michigan law.  (*Id.* at 12–13.)  Third, because Spitzer's breach of contract and breach of the duty of good faith and fair dealing claims fail, FCA insists that Spitzer's derivative declaratory judgment claim likewise fails.  (*Id.* at 13–14.)  Fourth, FCA asserts that the breach of fiduciary duty claim fails because Spitzer has not plausibly alleged the existence of a fiduciary

7

relationship.  (*Id.* at 14–15.)  Fifth, FCA maintains that Spitzer's civil conspiracy cannot be based solely upon an alleged breach of contract.  (*Id.* at 16.)  Sixth, FCA argues that Spitzer's request for punitive damages is improper because such damages are not available under Michigan law and cannot be awarded under Ohio law absent allegations of tortious conduct.  (*Id.* at 16–17.)  Seventh and finally, FCA asserts that the relief Spitzer seeks contravenes Ohio's statutes, which provide in relevant part that franchisors such as FCA must provide statutory notice to dealers such as Fred Martin prior to establishing or relocating a qualifying dealership.  (*Id.* at 18–19.)  For the following reasons, the Court concludes that Spitzer's causes of action for Breach of Good Faith Duty to Implement the LOI (Claim II); Breach of Fiduciary Duty (Claim III); Civil Conspiracy (Claim IV); and Punitive Damages (Claim VI), fail to state plausible claims for relief under Rule 12(b)(6).  However, Spitzer's causes of action for Breach of Contract and Declaration of Rights under Section 747 of the Act, the Arbitrator's Decision and the LOI remain.

### A.    Rule 12(b)(6) Standard

Pursuant to Rule 12(b)(6), the Court accepts Spitzer's factual allegations as true and construes the SAC in the light most favorable to Spitzer.  *See Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009).  To survive a motion to dismiss under this Rule, "a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'"  *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)).

The measure of a Rule 12(b)(6) challenge—whether a complaint raises a right to relief above the speculative level—"does not 'require heightened fact pleading of specifics, but only enough facts

to state a claim to relief that is plausible on its face.'" *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting *Twombly*, 550 U.S. at 555–56). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Deciding whether a complaint states a claim for relief that is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Consequently, examination of a complaint for a plausible claim for relief is undertaken in conjunction with the "well-established principle that Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief. Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Gunasekera*, 551 F.3d at 466 (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)) (internal quotation marks omitted). Nonetheless, while "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 679.

**B.     Breach of Contract (Claim I), Breach of the Duty of Good Faith and Fair Dealing (Claim II), and Declaratory Judgment (Claim V)**

FCA contends that Spitzer's causes of action for breach of contract, breach of the duty of good faith and fair dealing, and declaratory judgment should be dismissed. As these claims all relate to the question of whether the LOI—the contract at issue in this case—currently imposes any obligations on FCA, the Court will address these claims in the same section.

### 1. The Ohio Motor Vehicle Dealers Act

A substantial portion of Spitzer's breach of contract claim and its ancillary breach of the duty of good faith and fair dealing and declaratory judgment claims concerns the Ohio Motor Vehicle Dealers Act ("Dealers Act") and the obligations it imposes on dealers and manufacturers. O.R.C. §§ 4517.01 *et seq.* The parties agree that the Dealers Act governs their relations as franchisor and franchisee. (Doc. Nos. 22-1 at 18; 23 at 7–8, 20.) The parties dispute, however, the extent to which the Dealers Act controls their conduct. (Doc. Nos. 22-1 at 18–19; 23 at 20.)

The primary statute at issue in this case is § 4517.50 of the Dealers Act. This provision governs the jurisdiction of the OMVDB over dealership establishment disputes. It provides, in relevant part, that an existing dealer in a "relevant market area where the same line-make of motor vehicle is then represented" is entitled to certain rights and protections. O.R.C. § 4517.50(A). Where an existing franchisee/dealer is eligible for these protections, the dealer is entitled to notice from the franchisor/manufacturer. Specifically, a franchisor is required to "first give notice in writing . . . to the [OMVDB] and to each franchisee of such line-make in the relevant market area of the franchisor's intention to establish an additional new motor vehicle dealer in . . . that relevant market area." *Id.* The already established dealer then can, within fifteen days after receiving the notice, file a protest with the OMVDB opposing the establishment of the new dealership. *Id.* After a protest is filed, the OMVDB must inform the franchisor that a protest has been filed and initiate hearings pursuant to § 4517.57 of the Dealers Act. *Id.* The franchisor cannot establish the new dealership before giving notice or before the holding of a hearing on the protest. *Id.* § 4517.50(B).

At a protest hearing before the OMVDB, the franchisor has "the burden of going forward and of persuasion to establish that there is good cause . . . to establish or relocate an additional motor

vehicle dealer." *Id.* §§ 4517.57(C), 4517.50(A). At the same time, the protesting dealer bears the burden of establishing that the OMVDB has jurisdiction over the protest. *Jack Matia Chevrolet, Inc. v. GMC*, 2007 WL 275699, at *3 (Ohio App. 10th Dist. Feb. 1, 2007). The OMVDB only possesses jurisdiction over protests that are filed after notice is given, and where the protest is filed either (1) within fifteen days after receiving the notice of the franchisor's new dealership establishment, or (2) within fifteen days "of the conclusion of any appeal procedures the franchisor provides to the dealership." *Id.* at *4 (citing O.R.C. § 4517.50(A)).

The OMVDB then decides whether good cause exists. In making this determination, the OMVDB considers the following factors:

> (A) The effect of an additional or relocated dealer upon the existing new motor vehicle dealer of the same line-make in the relevant market area to be served by the additional franchisee or relocated dealer;
> (B) Whether it is injurious or beneficial to the public interest for the dealer to be established or relocated;
> (C) Whether the franchisees of the same line-make in the relevant market area are:
>> (1) Providing adequate competition and convenient consumer care for the motor vehicles of the same line-make in the relevant market area, which shall include the adequacy of motor vehicle sales and service facilities, equipment, supply of vehicle parts, and qualified sales and service personnel;
>> (2) Providing adequate market penetration and representation.
> (D) Whether the franchisor has complied with the requirements of this chapter.

O.R.C. § 4517.51. If the OMVDB has jurisdiction and determines that good cause exists for "*not* permitting the proposed dealer to be established," the franchisor cannot proceed. *Bob Daniels Buick Co. v. GMC*, 1998 WL 720018, at *2 (Ohio App. 10th Dist. Oct. 13, 1998) (citing O.R.C. § 4517.50(B)).

In sum, when a franchisor wants to establish a new motor vehicle dealership, it must give notice to and participate in a hearing with all existing same line-make dealers within the relevant market area. The purpose of these protections is to create a barrier to establishment by balancing "the

11

interests of the public in healthy and effective competition with risks resulting from the franchisor-manufacturer's greater economic and other power vis-à-vis any individual dealer." *Ed Schmidt Pontiac-GMC Truck, Inc. v. DaimlerChrysler Motors Co.*, 503 F. Supp. 2d 894, 904 n.13 (N.D. Ohio 2007). This barrier, while somewhat burdensome for the franchisor, is not an absolute bar. *Id.* If a dealer is not within the relevant market area, for example, notice and a hearing are not required, and the establishment can proceed. *See Franklin Park Lincoln-Mercury, Inc. v. Ford Motor Co. (Franklin Park I)*, 2010 U.S. Dist. LEXIS 3867, at *3–4 (N.D. Ohio Jan. 19, 2010).

### 2. Breach of Contract (Claim I)

The Court turns first to FCA's argument concerning Spitzer's breach of contract claim. According to FCA, the conditions in the LOI that would trigger FCA's own obligations for issuing the Sales and Service Agreement and authorizing the Green dealership were not satisfied. (Doc. No. 22-1 at 10–11.) FCA argues that Spitzer failed to satisfy the condition that it achieve the "successful resolution of all protests . . . seeking to block the proposed establishments at either the V. Odom Boulevard or [Green] locations." (*Id.* at 11 (alteration in original); Doc. No. 20-2 at 1.) FCA contends that although the Protests were dismissed, the effect of the dismissal "was not to approve of . . . an establishment" at the V. Odom Boulevard location. (Doc. No. 22-1 at 11.) According to FCA's argument, this was therefore not a "successful resolution," and FCA accordingly is not obligated under the LOI to establish the Green dealership. (*Id.*)

Spitzer disputes FCA's idea of what the term "successful resolution" means. Spitzer maintains that it does not require a "final determination *approving* the establishment." (Doc. No. 23 at 14 (emphasis in original).) The LOI itself, Spitzer argues, "provid[es] precisely the circumstance under which the LOI will terminate," to wit, "[t]his LOI shall terminate effective on the date of a *final*

*decision barring the proposed establishment at either location*." (*Id.* at 13–14 (emphasis in original); Doc. No. 20-2 at 1.) Because "a final decision barring the establishment of Spitzer's dealership at either location" "most certainly did not occur," Spitzer contends that the LOI was not terminated, and that the Protests were therefore "successfully resolved." (Doc. Nos. 23 at 13–14; 20 at ¶ 59.)

The parties appear to agree that the lack of a "successful resolution"—whatever that term may mean—to Fred Martin's or any other protest would mean that the LOI and FCA's obligations under it terminate. (Doc. Nos. 23 at 13–14; 24 at 1.) Additionally, each party concedes that the Protests were "resolved" by the OMVDB dismissal. (Doc. Nos. 23 at 14; 24 at 2–3.) Thus, the sole dispute is whether this "resolution" was "successful."

The LOI provides, in relevant part, that "Michigan law will be used to interpret [it], without regard to Michigan's conflicts of law rules." (Doc. No. 20-2 at 4 ¶ 13.) And the parties agree that the construction of the LOI is governed by Michigan law. (Doc. Nos. 22-1 at 12 n.2; 23 at 13.) Therefore, as to questions of contract interpretation, the Court will apply Michigan law.[7]

In Michigan, whether a contractual provision is ambiguous is a question of law. *Coates v. Bastian Bros., Inc.*, 741 N.W.2d 539, 543 (Mich. App. 1st Dist. 2007). A court gives all words their "plain and ordinary meanings" and then determines whether a term is "equally susceptible to more than a single meaning." *Barton-Spencer v. Farm Bureau Life Ins. Co. of Mich.*, 892 N.W.2d 794, 798 (Mich. 2017). Whether a term is susceptible to a single meaning is measured by a reasonable

---

[7] The Court will use Michigan contract law to determine the meaning of the disputed terms of the LOI. However, the Court will also consider Ohio's Dealers Act to inform the Court of whether a proffered interpretation of the LOI's terms is reasonable in light of the statutory scheme of set forth under the Dealers Act. Because Ohio state courts have the ultimate say in how the Dealers Act is applied, the Court will consider Ohio state law as well. In other words, the Court's conclusions as to the LOI's terms will be drawn from Michigan state contract law as applied to the Dealers Act and Ohio state courts' interpretation and application of the Dealers Act.

interpretation standard. *Meagher v. Wayne State Univ.*, 565 N.W.2d 401, 415 (Mich. App. 1st Dist. 1997). If a term's plain and ordinary meaning indicates that it is not susceptible to more than one interpretation, it is unambiguous on its face. *Coates*, 741 N.W.2d at 543 (citation omitted). "[A]n unambiguous contractual provision is reflective of the parties' intent as a matter of law." *Barshaw v. Allegheny Perf. Plastics, LLC*, 965 N.W.2d 729, 733 (Mich. App. 1st Dist. 2020) (citation omitted). Thus, "[i]f the language of the contract is unambiguous," a court "construe[s] and enforce[s] the contract as written" without extrinsic evidence of the parties' intent. *Quality Prods. & Concepts Co. v. Nagel Precision, Inc.*, 666 N.W.2d 251, 375 (Mich. 2003).

If a term is instead susceptible to more than one reasonable interpretation and is therefore ambiguous, "its meaning become[s] a question of fact." *Coates*, 741 N.W.2d at 543. Only where an ambiguity exists does a court need to go beyond the mere law to develop the facts of the parties' intent. *Meagher*, 565 N.W.2d at 415; *Nextep Sys. v. OTG Mgmt.*, 2011 U.S. Dist. LEXIS 100336, at *28 (E.D. Mich. Sept. 7, 2011).

In this instance, the Court concludes that there is only one reasonable interpretation of the LOI's "successful resolution" condition. Michigan courts "may consult a dictionary to determine the plain and ordinary meaning" of terms in a contract. *Total Quality, Inc. v. Fewless*, 958 N.W.2d 294, 303 (Mich. App. 1st Dist. 2020). According to the *Merriam-Webster.com Dictionary*, the plain and ordinary meaning of "successful" is "resulting in success," which itself means a "favorable or desired outcome." *Successful*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/successful (last visited Oct. 10, 2023); *Success*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/success (last visited Oct. 10, 2023). Additionally, under the construction doctrine *noscitur a sociis*, a term's context and surrounding language can

14

inform its meaning. *T & S Distribs., L.L.C. v. Mich. Bell Tel. Co.*, 2008 WL 724084, at *5 (Mich. App. Mar. 18, 2008). FCA suggests that the only reasonable reading of "successful" in the protest context is one in which the OMVDB explicitly "approves" the establishment of the protested dealership. (Doc. No. 22-1 at 11.) This is not a reasonable interpretation for two reasons. First, the condition itself provides that "Nothing in this [condition] shall bar the parties in interest . . . from entering into a mutually agreeable settlement of the challenge." (Doc. No. 20-2 at 1.) The existence of this settlement provision, which by its plain language provides that a settlement of the protest is still allowed under the provision and will not terminate the LOI, indicates that there are indeed additional pathways to "success" beyond OMVDB "approval" of the establishment.

Second, the situation that FCA contends is mandatory for the satisfaction of the "successful resolution" condition—that the OMVDB "approve" the establishment—is a nearly if not entirely impossible scenario to procure. The Dealers Act does not expressly provide for the procedure governing an attempt to establish a dealership when no protest is filed. *See* §§ 4517.50(A), 4517.57. A plain language reading of the statute demonstrates that the franchisor's obligations to attend a hearing and demonstrate good cause for the dealership begin only after a protest is filed. O.R.C. § 4517.57; *Jack Matia Chevrolet, Inc. v. GMC*, 2007 WL 275699, at *4 (Ohio App. 10th Dist. Feb. 1, 2007). Put differently, absent a protest, the franchisor is not required to attend a hearing or demonstrate good cause, and the franchisor and dealership face no barriers. *Lally v. Am. Isuzu Motors, Inc.*, 2006 WL 1781411, at *8–9 (Ohio App. 10th Dist. June 29, 2006) ("Unless a protest is required,

the only prerequisite to a franchisor [establishing] a dealer is the notice required by [O.R.C.] § 4517.50(A).").[8]

Therefore, if, after the franchisor has satisfied its statutory obligation to send out notice, no protest is filed, then no hearing or good cause demonstration is necessary. When a protest *is* filed and the OMVDB finds in favor of the protesting dealer, the establishment of the dealership is prohibited. O.R.C. § 4517.50(A); *Brondes Ford Maumee Ltd. v. KJAMS, LLC*, 91 N.E.3d 306, 308–09 (Ohio App. 6th Dist. 2017). What does *not* happen when a protest is filed and the OMVDB *dismisses* the protest as *moot* is that the establishment is "approved," as FCA contends could have happened. But this does not answer whether, for a protest resolution to be "successful" under the LOI, the OMVDB *must* "approve" of the establishment, or if a "dismissal" of the protest is also a "successful" resolution. FCA argues that OMVDB "approval" is the only resolution that is "successful," asserting a distinction between explicit "approval" of a protested action and "dismissal" of the protest. (Doc. No. 22-1 at 11.)

The Court concludes that the two are not meaningfully distinct and that both fall under the umbrella of "successful." Ohio courts and the OMVDB almost universally "*dismiss*" protests. *See, e.g.*, *Jack Matia*, 2007 WL 275699, at *2–3; *Douglas Bigelow Chevrolet, Inc. v. GMC*, 2003 WL 22511496, at *1–2, *4–5 (Ohio App. 10th Dist. Nov. 6, 2003); *Nissan of N. Olmsted, LLC v. Nissan N. Am., Inc.*, 38 N.E.3d 500, 507–08 (Ohio App. 10th Dist. 2015); *Fleisher v. Ford Motor Co.*, 2009 WL 2374554, at *1–2 (Ohio App. 10th Dist. Aug. 4, 2009). Where the OMVDB has "approved" a

---

[8] The *Lally* court opined about a franchisor "relocating" a dealer. *Lally v. Am. Isuzu Motors, Inc.*, 2006 WL 1781411, at *8–9 (Ohio App. 10th Dist. June 29, 2006). The Dealers Act, and specifically §§ 4517.50(A) and (B), treats the notice, hearing, and good cause requirements for relocations and establishment equally in all relevant contexts. O.R.C. §§ 4517.50(A), 4517.50 (B). Therefore, the fact that *Lally* concerned a relocation instead of a new dealer establishment is not significant in this circumstance.

protested action, the effect of the approval was the same as a dismissal—the protested action was allowed to continue.  *See, e.g.*, *Staffilino Chevrolet v. Ohio Motor Vehicle Dealers Bd.*, 1994 WL 183548, at *1 (Ohio App. 10th Dist. May 12, 1994).  Ohio courts and the OMVDB thus rarely "approve" the protested establishment and instead commonly opt to "dismiss" the attempt to block the establishment.  Either way, the establishment or other protested action is allowed to proceed.

As noted above, if, after a franchisor sends out notice, there is no protest, the "barrier" to establishment under the Dealers Act is not created.  *Ed Schmidt Pontiac-GMC Truck, Inc. v. DaimlerChrysler Motors Co.*, 503 F. Supp. 2d 894, 905 (N.D. Ohio 2007).  The franchisor and franchisee are free to proceed with the establishment.  Equally, when a protest is filed and subsequently dismissed or the franchisor's action is approved, the franchisor and franchisee are returned to the same unobstructed state of affairs that they were in prior to the protest and that they would have been in if no protest were filed—with freedom to establish the dealership.  *See Lally*, 2006 WL 1781411, at *8–9; *Staffilino*, 1994 WL 183548, at *1–2.  In other words, whether by dismissal of the protest on the merits or by approval of the franchisor's action, the franchisor and franchisee are able to proceed.  Because a franchisor that secured the "dismissal" of a protest has the same number of legal barriers to proceeding with its action—zero—as a franchisor whose action was "approved," it is unreasonable to conclude that the former franchisor did not achieve a "favorable or desired outcome."

FCA does not contend that any barriers created by a protest continue to exist after a protest is dismissed, and it even admits that the absence of legal challenges constitutes "success."  (*See* Doc. No. 22-1 at 11 ("Had the [protests] been successfully resolved, FCA [] and Spitzer would be free to establish a . . . dealership . . . without any further legal challenges.").)  That the Protests were

17

dismissed as moot in this case because Spitzer "no longer intended to proceed with the [V. Odom Boulevard] establishment" does not change the fact that Spitzer obtained its "desired outcome." (*Id.*)

The Court finds only one reasonable interpretation of a "successful resolution" in the context of the OMVDB's resolution of a protest: a resolution that simply resolves in the franchisor's favor, whether by dismissal of the protest or approval of the protested action. Therefore, under Michigan law, the term is unambiguous, and no factual development is required. The Court concludes that Spitzer has sufficiently alleged a plausible cause of action for breach of contract.

Accordingly, the Motion to Dismiss is **DENIED** as to Spitzer's breach of contract claim.

### 3. Breach of the Duty of Good Faith and Fair Dealing (Claim II)

FCA next moves to dismiss Spitzer's claim for breach of the duty of good faith and fair dealing. FCA contends that Michigan law only "permits [such a] claim, where one party to the contract makes its performance a matter of its own discretion." (Doc. No. 22-1 at 12 (citation and quotation marks omitted).) FCA argues that the LOI did not vest FCA "with the level of discretion that would support" this type of claim. (*Id.* at 13.)

Spitzer counters that FCA's conduct in the Protests shows that it had discretion. (Doc. No. 23 at 15.) And according to Spitzer, the duty of good faith and fair dealing "must be read into the contract" because it "contains terms that are wholly discretionary to FCA." (*Id.* at 16.)

The Court agrees with FCA. For this cause of action, the parties agree that Michigan law applies. (Doc. Nos. 22-1 at 12 n.2, 12–13; 23 at 14–16.) Under Michigan law, a breach of the duty of good faith and fair dealing is not an independent tort cause of action and falls instead under a general breach of contract claim. *Sims Buick-GMC Truck, Inc. v. Gen. Motors LLC*, 876 F.3d 182, 186 (6th Cir. 2017) (applying Michigan law); *Harp v. Equilon Enters.*, 2012 WL 975050, at *6 (Mich.

18

App. 1st Dist. Mar. 22, 2012); *Gorman v. Am. Honda Motor Co.*, 839 N.W.2d 223, 235 (Mich. App. 1st Dist. 2013).  A breach of contract claim can assert a violation of the implied duty of good faith and fair dealing only where "a contract explicitly leaves the manner of a party's performance to its discretion." *Hewitt v. Bank of Am. N.A.*, 2013 U.S. Dist. LEXIS 96820, at *33 (W.D. Mich. July 11, 2013).  "Where a party to a contract makes the manner of its performance a matter of its own discretion, the law does not hesitate to imply the proviso that such discretion be exercised honestly and in good faith." *Ferrell v. Vic Tanny Int'l*, 357 N.W.2d 669, 670 (Mich. App. 1st Dist. 1984) (citation omitted).  This proviso applies only where the acting party's discretion is "unbridled," and not where the contract "provides conditions for the use of discretion." *Harp*, 2012 WL 975050, at *6 (quotation marks omitted).  Courts evaluating whether this proviso applies to a given contract examine whether a plaintiff has pointed to a provision in the contract wherein another party "promised to exercise discretion." *See, e.g.*, *Hewitt*, 2013 U.S. Dist. LEXIS 96820, at *34; *Liggett Rest. Grp. v. City of Pontiac*, 2005 WL 3179679, at *2 (Mich. App. 1st Dist. Nov. 29, 2005).

The Court finds that there is no implied duty here.  Spitzer argues that FCA used its discretion to harm Spitzer in bad faith by: filing lawsuits against Spitzer to impede its prosecution of the breach of contract claim against Fred Martin; facilitating the Falls protest; failing to protect Spitzer's interest in the Protests; claiming that the OMVDB's dismissal of the Protests was not "successful"; and contending that Spitzer's requested relief violates Ohio law.  (Doc. No. 23 at 15.)  These actions may appear to run afoul of a good faith duty.  But discretion for these actions is absent from the LOI.

To present a breach of the duty of good faith and fair dealing claim, there must first have been a duty upon which FCA could run afoul.  It may be true, for example, that Spitzer "had no control" over FCA's actions in the Protests and needed to rely on FCA to protect its interests.  (*Id.* at 15); *see*

19

*also* O.R.C. § 4517.57(C).  However, the Court is bound to consider only the express terms of the LOI.  Spitzer does not allege that the LOI expressly leaves the manner of FCA's performance of its obligations under the LOI to FCA's sole discretion.  *See McLeichey v. Bristol W. Ins. Co.*, 408 F. Supp. 2d 516, 522–23 (W.D. Mich. 2006).[9]  It follows that there is neither unbridled nor conditional discretion in the LOI which would require FCA to act "honestly and in good faith."  *See Harp*, 2012 WL 975050, at *6.

Spitzer's other allegation that FCA failed to adequately protect its interests in the Protests before the OMVDB appears to be based on the provision of the Dealers Act that provides that a franchisor must demonstrate good cause at a protest hearing.  (Doc. No. 23 at 15.)  Essentially, Spitzer maintains that FCA "utterly failed" to protect Spitzer's interest in the Protests by (1) assuring Spitzer that it would do so and (2) instead refusing to hire or consult with an expert witness to establish good cause.  (*Id.* at 15; Doc. No. 20 at ¶¶ 30–31.)  As discussed above, the Dealers Act does indeed place the burden of showing good cause at a protest hearing on the franchisor.  O.R.C. § 4517.57(C).  It may be wise to hire experts from the franchisor's perspective.  But nothing in that statute places an express duty upon a franchisor to consult experts or follow a particular method of demonstrating good cause.  All the statute requires of a franchisor at a protest hearing is that it demonstrate good cause in order to defeat the protest, without specifying the technique in doing so.  Notwithstanding the fact that the statute is not a contract, there is no explicit allocation of sole discretion in the Dealers Act to a franchisor.  *See Moore v. Auto Club Servs.*, 615 F. Supp. 3d 670, 687 (E.D. Mich. 2022) (evaluating discretion allocation argument based on case law-created duty).  Even if "sole, unilateral discretion"

---

[9] A review of the LOI reveals only one instance in which FCA or its predecessor were granted discretion, in particular the extension of time periods set forth in the LOI.  (*See* Doc. No. 20-2 at 3).  Spitzer is not alleging a breach of the covenant of good faith and fair dealing based on any extension or failure to extend a deadline, so this provision is inapplicable.

were vested in FCA, Spitzer does not provide authority demonstrating that refusal to hire an expert witness violates the duty.  If FCA were held liable solely for not hiring or consulting an expert, the Court would effectively be reading into the statute a requirement to consult an expert to establish good faith.  The Court declines to do so here.

The Court finally addresses Spitzer's contention that the United States Court of Appeals for the Sixth Circuit mandated that the LOIs to be issued post-Chrysler bankruptcy cannot be "merely illusory."  (Doc. No. 23 at 15 (citing *Chrysler Grp. LLC v. Fox Hills Motor Sales, Inc.*, 776 F.3d 411, 432 (6th Cir. 2015)).)  Spitzer asserts that any provisions in the LOI cannot be "unreasonably onerous or . . . grant [FCA] broad discretion to back out."  (*Id.*)  Spitzer does not explain how the condition that any protest be resolved "successfully" by either dismissal of the protest or approval of the protested action is "unusual and onerous." After all, Spitzer itself claims that it in fact did achieve the "successful resolution" of the Protests.  (*See* Doc. No. 23 at 13–14).  The Court is not convinced that a condition that was allegedly met was "unreasonably onerous."

Because no provision of the LOI expressly allocates discretion to FCA concerning its alleged bad faith conduct, the duty cannot reasonably be said to exist in the LOI.  Therefore, the Motion to Dismiss is **GRANTED** as to Spitzer's cause of action for the breach of the implied duty of good faith and fair dealing.

### 4.  Declaratory Judgment (Claim V)

FCA also requests dismissal of Spitzer's declaratory judgment claim because it is derivative of Spitzer's breach of contract and breach of the duty of good faith and fair dealing claims.  (Doc. No. 22-1 at 13–14.)  FCA does not contest the merits of a declaratory judgment claim where either of Spitzer's first two claims succeed.  (*See id.*)

21

Spitzer requests adjudication of its rights pursuant to Section 747, the Arbitrator's Decision, and the LOI.  (Doc. No. 20 at ¶ 79.)  Specifically, it seeks a declaration that it has a right to establish the new Green dealership as well as to a Sales and Service Agreement from FCA once the dealership is constructed.  (*Id.*)

The Court has concluded that Spitzer's breach of contract claim survives dismissal.  Because Spitzer's declaratory judgment claim is undisputedly derivative of its breach of contract cause of action, the declaratory judgment claim also survives dismissal.  *Emergency Med. Care Facilities, P.C. v. Bluecross Blueshield of Tenn., Inc.*, 2015 U.S. Dist. LEXIS 72964, at *15 (W.D. Tenn. June 5, 2015); *Urbassik v. Am. Fam. Mut. Ins. Co.*, 2023 U.S. Dist. LEXIS 30492, at *20–21 (N.D. Ohio Feb. 23, 2023) (dismissing breach of contract as well as derivative declaratory judgment claims).  The Court therefore declines to dismiss Spitzer's declaratory judgment claim on the instant Motion to Dismiss.  Accordingly, FCA's Motion to Dismiss is **DENIED** as to Spitzer's declaratory judgment claim.

### C.     Breach of Fiduciary Duty (Claim III)

FCA also seeks dismissal of Spitzer's cause of action for breach of fiduciary duty.  FCA insists that fiduciary relationships between manufacturers and dealers are rare, and that Spitzer has failed to "plausibly allege the existence of a fiduciary relationship" between itself and FCA.  (Doc. No. 22-1 at 14.)  Spitzer argues that the instant case is an "exceptional circumstance" where such a relationship existed.  (Doc. No. 23 at 16.)  Specifically, Spitzer contends that FCA was Spitzer's fiduciary "for the limited goal that both parties were supposed to have, namely, to prosecute the franchisor and franchisee's [LOI] during the OMVDB's protest process."  (*Id.*)  According to Spitzer, FCA wielded

"near life and death economic power" over Spitzer in the establishment of the Green dealership. (*Id.* at 17.)

The parties dispute whether Ohio or Michigan law applies to this claim. (Doc. Nos. 22-1 at 14; 23 at 13, 16.) The Court resolves this issue by consulting the choice-of-law rules of the forum State, here, Ohio. *See Herndon v. Torres*, 791 F. App'x 547, 551 (6th Cir. 2019). Under Ohio law, the Court first determines "if the laws of the States at issue actually conflict." *Id.* (citing *Akro-Plastics v. Drake Indus.*, 685 N.E.2d 246, 248 (Ohio. App. 11th Dist. 1996)). "If there is no conflict, then no choice-of-law determination is necessary and the substantive law of Ohio applies." *Id.* (citing *Cross v. Carnes*, 724 N.E.2d 828, 836 (Ohio App. 11th Dist. 1998)). There is no conflict when two States "would use the same rule of law or would otherwise reach the same result" in applying their respective laws. *See Atlas Indus. Contrs., LLC v. In2gro Techs.*, 2021 U.S. Dist. LEXIS 56630, at *12 (S.D. Ohio Mar. 25, 2021) (citation omitted).

The Court concludes that no conflict exists because Ohio and Michigan law apply the same rules of law for breach of fiduciary duty claims. *See Franklin Park Lincoln-Mercury, Inc. v. Ford Motor Co. (Franklin Park II)*, 2010 U.S. Dist. LEXIS 66732, at *7–8 (N.D. Ohio July 2, 2010) ("Ohio and Michigan law have nearly identical standards for the establishment of a fiduciary relationship."). Therefore, Ohio substantive law will be applied.

A breach of fiduciary duty cause of action in Ohio requires "the existence of a fiduciary duty" in a relationship. *Tanner v. Wells Fargo Bank, N.A.*, 2020 U.S. Dist. LEXIS 232717, at *17 (N.D. Ohio Dec. 10, 2020). In a fiduciary relationship, "special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired

by virtue of this special trust." *Weiler v. C.L.*, 2022 WL 17220586, at *5 (Ohio App. 8th Dist. Nov. 23, 2022) (citation omitted). In the franchisor-franchisee context,

> [a] fiduciary relationship does not exist between a franchisor and a franchisee in the absence of a statute expressly creating such fiduciary relationship or, in the alternative, absent an understanding, held by both parties to the subject agreement, that a special trust and confidence has been reposed by the franchisee in the franchisor.

*Saydell v. Geppetto's Pizza & Ribs Franchise Sys., Inc.*, 652 N.E.2d 218, 231 (Ohio App. 8th Dist. 1994).

Spitzer does not clearly argue that there is an express statute creating the fiduciary relationship. Spitzer's SAC does reference Section 747 of the Act as a basis for a fiduciary duty. (Doc. No. 20 at ¶ 71–72.) But nothing in the plain language of Section 747 creates a fiduciary relationship between any covered manufacturer and dealer. *See* Consolidated Appropriations Act of 2010, Pub. L. No. 111-117, § 747, 123 Stat. 3034, 3219–3221. The closest Spitzer gets to this contention are the references to the Dealers Act, which, in relevant part, requires the franchisor to demonstrate good cause at a protest hearing for the establishment of a dealership. (Doc. No. 23 at 16–17); Consolidated Appropriations Act of 2010, § 747. Like Section 747, however, the Dealers Act does not expressly require a franchisor to be the franchisee's fiduciary. *Mercure v. GMC*, 2003 U.S. Dist. LEXIS 28733, at *27 (N.D. Ohio Mar. 17, 2003) (citation omitted). Thus, neither statute creates a fiduciary relationship.

Spitzer's only recourse therefore lies in the assertion of an extra-statutory "special trust and confidence" relationship. Generally, "franchise relationships—including those in the automotive industry—are not inherently fiduciary in nature." *Franklin Park Lincoln-Mercury, Inc. v. Ford Motor Co. (Franklin Park III)*, 530 F. App'x 542, 546 (6th Cir. 2013) (citation and emphasis omitted). But Spitzer contends that this "is the rare instance where a fiduciary relationship arises in spite of the

general rule that there is no franchise relationship between a franchisor and franchisee." *Brentlinger Enters. v. Volvo Cars of N. Am., LLC*, 2016 U.S. Dist. LEXIS 113978, at *39 (S.D. Ohio Aug. 25, 2016). Such a unique relationship might arise where an "agreement effectively grants one party 'the authority to exercise near life and death economic power' over the [other] party." *Shepard & Assocs. v. Lokring Tech., LLC*, 2023 U.S. Dist. LEXIS 145820, at *42 (N.D. Ohio Aug. 18, 2023) (quoting *Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A.*, 244 F.R.D. 204, 215 (S.D.N.Y. 2007)). In support of this argument, Spitzer cites *Manhattan Motorcars*.

The Court is disinclined to follow *Manhattan Motorcars* for several reasons. First, *Manhattan Motorcars* was decided by the United States District Court for the Southern District of New York, which applied New York state law. *See generally* 244 F.R.D. 204. Not only is a New York federal court's ruling not binding on this Court,[10] but even if it was, its application of New York state law would be inapposite to the Dealers Act and Ohio breach of fiduciary duty claims.

Second, to the extent that the elements for a fiduciary duty cause of action in New York "mirror those in Ohio," no Ohio state court has addressed the applicability of *Manhattan Motorcars*. *Franklin Park III*, 530 F. App'x 542, 546. Nor have the federal courts that have considered following *Manhattan Motorcars*' rationale done so. *See, e.g.*, *id.* at 548–49; *Shepard & Assocs.*, 2023 U.S. Dist. LEXIS 145820, at *41–44. In *Manhattan Motorcars*, the dealership's agreement with the manufacturer gave the manufacturer "near life and death economic power" over the dealership. *Manhattan Motorcars*, 244 F.R.D. at 219. The agreement required the dealership to provide confidential sales, inventory, customer, and business reports," which in part created a confidential

---

[10] This is true despite the observation that New York's law may be "in line with the 'special trust' touchstone under Ohio law." *Franklin Park II*, 2010 U.S. Dist. LEXIS 66732, at *10.

and dependent relationship.  *Id.* at 219–20.  Sixth Circuit courts have distinguished *Manhattan Motorcars* based on this lack of a proprietary information-sharing relationship.  This Court does the same here.  Spitzer may have expected that FCA would be its champion during the Protests.  But this does not rise to the level of the dependent, confidential, life-or-death relationship that *Manhattan Motorcars* recognized.  *Franklin Park Lincoln-Mercury, Inc. v. Ford Motor Co.*, 2011 U.S. Dist. LEXIS 167923, at *7 (N.D. Ohio Dec. 27, 2011).

Like most of the other courts in the Sixth Circuit to consider the issue, this Court "see[s] nothing that makes this a 'rare instance' where a confidential relationship gave rise to a fiduciary duty." *Franklin Park III*, 530 F. App'x at 549.  The only Sixth Circuit court to find a dealership's allegations to resemble those in *Manhattan Motorcars* involved allegations that the dealership was required to provide the manufacturer with "confidential and proprietary information," making it "dependent" upon the manufacturer for "economic survival." *Franklin Park II*, 2010 U.S. Dist. LEXIS 66732, at *10–11.  These allegations are not found in Spitzer's SAC.  Spitzer is therefore effectively requesting that this Court apply for the first time *Manhattan Motorcars* to find a fiduciary duty under Ohio law on these facts.  The Court will not do so.

Beyond *Manhattan Motorcars*, no Ohio state court has held that a franchisor has a fiduciary duty to a franchisee to defend its attempted establishment of a dealership against a protestant under § 4517.50(A) or § 4517.57 of the Dealers Act.  Spitzer's cited authorities in favor of extending a fiduciary relationship to the Dealers Act protest proceedings involved instances outside the protest context.  (*See* Doc. No. 23 at 16–18 (citing *Manhattan Motorcars*, 244 F.R.D. 204, and *Shepard & Assocs.*, 2023 U.S. Dist. LEXIS 145820)).  In fact, courts have generally abstained from finding that

26

a fiduciary duty exists in the manufacturer-dealer and franchisor-franchisee relationship context.  *See, e.g.*, *Mercure*, 2003 U.S. Dist. LEXIS 28733, at *26–28; *Franklin Park III*, 530 F. App'x at 548–49.

The Court concludes that Spitzer has failed to adequately allege that FCA owed it a fiduciary duty under the LOI or with regard to the Protests.  Therefore, Spitzer fails to state a cause of action for breach of fiduciary duty.  Accordingly, the Motion to Dismiss is **GRANTED** as to Spitzer's breach of fiduciary duty claim.

### D.      Civil Conspiracy (Claim IV)

FCA next contends that Spitzer's civil conspiracy cause of action fails for two reasons.  First, FCA avers that Spitzer has failed to plead sufficient facts to support a claim that FCA contravened "*any* portion of Section 747" or the Arbitrator's Decision.  (Doc. No. 22-1 at 16 (emphasis in original).)  Second, FCA insists that Spitzer's conspiracy claim hinges "entirely on FCA['s] alleged breaches of the LOI."  (*Id.*)  A conspiracy claim, FCA argues, cannot be predicated upon a breach of contract.  (*Id.*)  Alternatively, Spitzer has failed to plausibly allege an underlying tort.  (*Id.*)

FCA cites both Ohio and Michigan law, and Spitzer, although claiming that Ohio law applies to the civil conspiracy claim, responds with both as well.  Beginning with Ohio's choice of law analysis, the Court concludes that Ohio and Michigan apply similar rules of law to civil conspiracy claims.  Each requires a "concerted action," known in Ohio as a "malicious combination," by "two or more persons . . . to accomplish a criminal or unlawful purpose."  *Breath v. City of Detroit*, 524 F. Supp. 3d 704, 709 (E.D. Mich. 2021); *Ziegler v. Findlay Indus.*, 380 F. Supp. 2d 909, 913 (N.D. Ohio 2005).  With similar elements, there is no conflict, and Ohio substantive law will be applied.

Ohio defines "civil conspiracy" as "a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages."

27

*Kenty v. Transamerica Premium Ins. Co.*, 650 N.E.2d 863, 866–67 (Ohio 1995).  In Ohio, "a party cannot be held liable for conspiring to breach his own contract."  *Wagoner v. Leach Co.*, 1999 WL 961166, at *20 (Ohio App. 2d Dist. July 2, 1999).  Ohio law thus precludes a civil conspiracy claim predicated upon a breach of contract "when there are only two alleged conspirators and one of the alleged conspirators is the contractually bound party."  *Omega Cable & Comm., Inc. v. Time Warner, Inc.*, 2008 U.S. Dist. LEXIS 6173, at *22 (N.D. Ohio Jan. 16, 2008).  Civil conspiracy instead requires "an underlying tortious act."  *Strama v. Allstate Ins. Co.*, 2015 WL 3946373, at *8 (Ohio App. 7th Dist. June 17, 2015).  There must be, therefore, a distinct underlying tort claim.  *Id.*

Spitzer alleges that FCA conspired with Fred Martin "to sabotage Spitzer in the protest" and thwart the construction of the Green dealership.  (Doc. No. 20 at ¶ 76.)  Spitzer contends that FCA's actions in the conspiracy contravened the mandates of Section 747, the Arbitrator's Decision, and the LOI.  (*Id.*)  As determined above, Spitzer has sufficiently alleged a claim for breach of contract.  This breach, however, as both parties agree, cannot sustain alone Spitzer's civil conspiracy claim—there must be an adequately pleaded underlying tort.

Spitzer only argues that its tort-based causes of action for breach of the duty of good faith and fair dealing and breach of fiduciary duty buttress its civil conspiracy claim.  The Court has concluded that these claims are not sufficiently pleaded.  With no other tort-based claims upon which the civil conspiracy cause of action can stand, the civil conspiracy claim must be dismissed.  Accordingly, the Motion to Dismiss is **GRANTED** as to Spitzer's civil conspiracy claim.

### E.  Punitive Damages (Claim VI)

FCA lastly argues against the availability of punitive damages for any of its alleged conduct.  According to FCA, Spitzer's punitive damages request should be denied for two reasons: (1) Spitzer

has failed to state a claim upon which relief can be granted and therefore cannot obtain punitive damages; and (2) neither Michigan nor Ohio law allow for punitive damages where a statute does not expressly provide for it and independent tortious conduct is not alleged. (Doc. No. 22-1 at 16–17.) Because the Court has already concluded that Spitzer has stated a claim upon which relief can be granted for FCA's breach of contract (Claim I), FCA's argument for dismissal of the punitive damages request on its first ground fails.

The Court therefore turns to FCA's second argument. In its Response, Spitzer only notes that punitive damages are "clearly" available in this case. (Doc. No. 23 at 19.) Based on Spitzer's cited authorities, the Court construes Spitzer's argument to be that its breach of contract claim is accompanied by a tort, which is sufficient for punitive damages under Michigan law, and that its breach of fiduciary duty claim, when combined with allegations of malice, support an Ohio punitive damages award. As the parties dispute whether Michigan or Ohio law applies to Spitzer's punitive damages claim (Doc. Nos. 22-1 at 16–17; 23 at 13, 19), the Court will evaluate whether a conflict exists. For the reasons that follow, the Court holds that, regardless of whether Michigan or Ohio law is applied, the same result is reached, and that therefore, there is no conflict. Additionally, the Court concludes that Spitzer cannot recover punitive damages under either State's law.

In Michigan, courts recognize two forms of punitive damages: exemplary damages and punitive damages. This distinction between the two is relatively modern yet important because the requirements for each differ significantly. *Buhland v. Fed. Cartridge Co.*, 2013 U.S. Dist. LEXIS 203204, at *16 (W.D. Mich. May 9, 2013) (citation omitted). FCA conflates the two in its Reply, interchangeably using "punitive" and "exemplary." (Doc. No. 24 at 8.) "Punitive damages" are those "designed to punish a party for misconduct" and typically require express statutory authority to be

29

recoverable. *Mathis v. Controlled Temperature, Inc.*, 2008 WL 782634, at *5 (Mich. App. 1st Dist. Mar. 25, 2008); *Gilbert v. DaimlerChrysler Corp.*, 685 N.W.2d 391, 400 (Mich. 2004). "Exemplary damages," on the contrary, are those which serve to compensate the plaintiff for harm done to him. *Mathis*, 2008 WL 782634, at *5. Breaches of commercial contracts tend to be financial, and therefore generally fall into the former "punitive damages" category. In this case, Spitzer seeks "punitive damages" for FCA's alleged bad faith actions in performing its contractual obligations pursuant to the LOI. (Doc. Nos. 20 at ¶¶ 80–82; 23 at 19.)

As to pure punitive damages, Spitzer in its Brief in Opposition does not identify any statutory authority for such recovery. (Doc. No. 23 at 19.) Spitzer refers to Section 747 of the Act of 2010 in its SAC. (Doc. No. 20 at ¶¶ 78–79.) But notwithstanding the fact that Section 747 is a federal and not a Michigan state statute, nothing in Section 747 discusses the availability of punitive damages for a franchisor's failure to adhere to its contractual duties. *See Chrysler Grp. LLC v. S. Holland Dodge*, 862 F. Supp. 2d 661, 678 (E.D. Mich. 2012) (observing that Section 747 "does not authorize an award of monetary damages"). Accordingly, to the extent that Spitzer is relying on a pure punitive damages theory under Michigan law, Spitzer cannot recover.

Exemplary damages in Michigan are generally unavailable for breach of contract. *Tempo, Inc. v. Rapid Elec. Sales & Serv., Inc.*, 347 N.W.2d 728, 735 (Mich. App. 1st Dist. 1984). There is one exception, which requires "tortious conduct independent of the breach." *Id.* The "malicious," "reckless," and "intentional" bad faith conspiracy in which FCA allegedly engaged in to deprive Spitzer of its southern Akron dealership *is* a separate tortious allegation, but, as the Court has already concluded, an insufficient one. (Doc. No. 23 at 19.) Spitzer has not adequately pleaded a separate

30

tort under Michigan law. Therefore, Spitzer cannot recover exemplary damages under Michigan law. *See Haslam v. Pepsi-Cola Co.*, 1984 U.S. Dist. LEXIS 16467, at *4–6 (E.D. Mich. May 23, 1984).

In Ohio, there is little distinction between "punitive damages" and "exemplary damages." *Bonesteel v. Nash*, 65 N.E.3d 326, 329 (Ohio App. 5th Dist. 2016) (regarding the terms as generally "synonymous"). Punitive damages may be available "in tort cases involving fraud, insult or malice." *Clary v. Pittman*, 2001 WL 1647299, at *4 (Ohio App. 7th Dist. Dec. 21, 2001). In a contract case, however, and similarly to Michigan's exemplary damages, such damages are ordinarily not recoverable in Ohio absent a showing of "actual damages from tortious conduct." *Gem Sav. Ass'n v. Sterling Gold Props., Ltd.*, 1992 WL 245999, at *7 (Ohio App. 2d Dist. Oct. 2, 1992). Where an action involves both tort and breach of contract claims, "a plaintiff may recover punitive damages if the breach of contract is accompanied by a connected, but independent tort involving fraud, malice or oppression." *Koehler v. PepsiAmericas, Inc.*, 268 F. App'x 396, 407 (6th Cir. 2008) (internal quotation marks omitted). The exception to the general prohibition against awarding punitive damages for a breach of contract thus "permits punitive damages *not for the breach of contract*, but for the tortious conduct." *Mabry-Wright v. Zlotnik*, 844 N.E.2d 858, 863 (Ohio App. 3d Dist. 2005) (emphasis added). Some Ohio courts have extended this exception further, stating that punitive damages may be "appropriate when there is a serious abuse of position of privilege or power . . . [e]ven though the underlying relationship is contractual." *Thompson v. Citizens Nat'l Bank*, 2016 U.S. Dist. LEXIS 173574, at *12–13 (N.D. Ohio Dec. 15, 2016) (alteration in original) (citation

omitted).  For example, when a claim of the "breach of the duty of good faith and fair dealing sounds in tort, punitive damages can follow."  *Id.* at *13.

Where bad faith is alleged, "punitive damages are available upon a showing of actual malice." *Asmaro v. Jefferson Ins. Co. of N.Y.*, 574 N.E.2d 1118, 1123 (Ohio App. 6th Dist. 1989).  "Malice" refers to "anger, hatred, ill will, [or] a spirit of revenge," as well as a "conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm."  *Omega Riggers & Erectors, Inc. v. Koverman*, 65 N.E.3d 210, 222 (Ohio App. 2d Dist. 2016) (citation omitted).

As concluded above, Spitzer has failed to sufficiently allege that FCA breached either the duty of good faith and fair dealing or any fiduciary duty.  Therefore, Spitzer has not alleged that FCA engaged in actionable tortious conduct independent of its alleged failure to abide by the LOI.  Spitzer accordingly cannot recover punitive damages under Ohio law.  *See Mabry-Wright*, 844 N.E.2d at 862.

The Court concludes that because Spitzer has failed to plead an independent tort claim, under both Ohio and Michigan law, punitive damages are unavailable as a matter of law.  Therefore, the Motion to Dismiss is **GRANTED** as to Spitzer's punitive damages cause of action.

### F.    Relief in Contravention of Ohio Law

To the extent Spitzer's allegations do show that the conditions precedent to FCA's performance under the LOI have been satisfied, FCA alternatively argues that Spitzer's requested relief nevertheless contravenes the Dealers Act.  (Doc. No. 22-1 at 18–19.)  FCA contests on this ground Spitzer's request for a declaratory judgment "requiring FCA to honor the terms of the LOI and issue a Sales and Service Agreement to Spitzer upon construction of a new dealership facility" in Green.  (Doc. No. 20 at 17.)  FCA maintains that it has not yet provided statutory notice to any

dealership as required under the Dealers Act.  (Doc. Nos. 22-1 at 18–19; 24 at 9.)  If the Court requires FCA to issue a Sales and Service Agreement, FCA avers, it will necessarily circumvent the statutory notice requirement, thereby violating the Dealers Act.  (Doc. No. 22-1 at 18–19.)

Spitzer argues that notice to the only dealer affected by the prospective Green establishment, Fred Martin, is not required because it "contractually waived its rights to protest the . . . Green location[,] waived notice of the establishment of the dealership . . . , and waived the right to a hearing before the OMVDB."  (Doc. No. 23 at 20.)  Alternatively, Spitzer admits, to the extent FCA still has an obligation to provide notice, FCA could do so "*at any time*."  (*Id.* (emphasis in original).)

The Court holds that Spitzer's requested relief will not contravene the Dealers Act.  FCA is indeed correct that it continues to maintain a statutory obligation to provide notice to affected dealers. Spitzer does not contest and in fact concedes that, absent the outstanding agreement it has with Fred Martin, a franchisor such as FCA would be required to provide statutory notice to Fred Martin under the Dealers Act prior to establishing the Green dealership.  (*See id.* (observing that Fred Martin is "the only dealer in the relevant market area of Spitzer").)

But Spitzer's requested relief does not say otherwise.  Reading it plainly, Spitzer's request for relief in the SAC relates to a declaratory judgment that FCA should "issue a Sales and Service Agreement . . . *upon construction of a new dealership facility* [in Green]."  (Doc. No. 20 at 17.) Spitzer has asserted throughout its pleadings that it has halted construction on the Green facility since the Protests were filed, and that it will continue to do so until the resolution of these outstanding legal issues.  (*Id.* at ¶ 23.)  There is nothing in the form of relief requested that, if granted, would require FCA to immediately issue a Sales and Service Agreement to Spitzer for the Green dealership.  Nor does FCA allege that, if this case is eventually resolved in Spitzer's favor, in the intermission between

33

said resolution and Spitzer's completion of the construction of the facility, FCA could not fulfill its statutory duty and provide notice to Fred Martin or any other dealer.  After all, once FCA provides notice, an affected dealer would only have fifteen days to respond and/or request a hearing.  O.R.C. § 4517.50(A).  FCA does not argue it would be unable to fulfill its statutory duty prior to the hypothetical construction of the Green dealership.  This argument is unconvincing.

The Motion to Dismiss is **DENIED** as to FCA's argument that Spitzer's requested relief contravenes Ohio law.

### III.    Conclusion

For the reasons set forth above, the Court **GRANTS IN PART** and **DENIES IN PART** FCA's Motion to Dismiss.  (Doc. No. 22.)

Specifically, the Court **GRANTS** FCA's Motion to Dismiss as to Spitzer's causes of action for: the breach of the duty of good faith (Claim II); breach of fiduciary duty (Claim III); civil conspiracy (Claim IV); and punitive damages (Claim VI).  The Court **DENIES** FCA's Motion to Dismiss as to Spitzer's causes of action for breach of contract (Claim I) and declaratory judgment (Claim V).

**IT IS SO ORDERED.**

         *s/Pamela A. Barker*
         PAMELA A. BARKER
Date:  October 13, 2023       U. S. DISTRICT JUDGE